ORIGINAL

```
  1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF FLORIDA
  2                        ORLANDO DIVISION

  3            Case no.:  6:07-cr-97-Orl-18DAB

  4    UNITED STATE OF AMERICA,          )      Orlando, Florida
                                         )      July 11, 2007
  5                Plaintiff,            )      2:00 p.m.
                                         )
  6                   v.                 )
                                         )
  7    LOUIS J. PEARLMAN,                )
                                         )
  8                Defendant.           )
                                         )
  9    _____)

 10
```

FILED
2007 AUG -8 AM 8: 44
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

```
 11
 12            Transcript of initial appearance and

 13            Arraignment on Indictment

 14        before the Honorable Donald P. Dietrich

 15            United States Magistrate Judge

 16

 17    Appearances:

 18    Counsel for Plaintiff:    Roger Handberg

 19
 20    Counsel for Defendant:    Fletcher Peacock
                                 James T. Skuthan
 21

 22    Tape transcriptionist:    Diane C. Peede, RMR, CRR
                                 United States Courthouse
 23                              80 North Hughey Avenue, #300
                                 Orlando, Florida  32801
 24                              (321) 537-2130

 25    Proceedings recorded by tape recording, transcript produced
       by computer.
```

PROCEEDINGS

THE COURTROOM DEPUTY:  Case number:  6:07-cr-97-Orl-18DAB, United States of America versus Louis J. Pearlman.

Counsel, please state your appearances for the record.

MR. HANDBERG:  Good afternoon, Your Honor.  Roger Handberg on behalf of the United States.  With me at counsel table is Scott Skinner with the F.B.I.; and behind us is John Crawford with the Federal Deposit Insurance Corporation, Inspector General's Office; Daniel Brooks with the State of Florida; and Annette Walden with the Internal Revenue Service.

THE COURT:  Thank you.

MR. PEACOCK:  Good afternoon, Your Honor.  Fletcher Peacock here on behalf of the Federal Public Defender's Office.  With me is James T. Skuthan, the Chief Assistant Federal Public Defender.

THE COURT:  Very well.

The appearance of the Federal Public Defender, of course, is provisional pending further order of the Court.

We proceed on the initial appearance of Louis Pearlman before this Court, on his having earlier been held to answer in the U.S. District Court for the District of Guam and ordered removed.

On review of the record of proceedings there in the

 1   District of Guam, I find that the defendant was appointed --

 2   or was represented, rather, by counsel appointed by the Court

 3   under the Criminal Justice Act; and this would, of course, be

 4   predicated on his not waiving counsel and his having been

 5   found financially eligible therefor.

 6        The Court is prepared to continue such

 7   representation under the Criminal Justice Act, specifically

 8   authorizing the Federal Public Defender to represent him in

 9   all proceedings in this court, including trial, surmising

10   that there's been no change in his financial circumstances

11   from the proceedings there in Guam while en route to here.

12        What does the Federal Public Defender have to say

13   or offer in support of his serving in this case on

14   appointment?

15        MR. PEACOCK:  May I have just one minute, Your

16   Honor?

17        THE COURT:  Sure.

18        (Discussion held off the record.)

19        MR. PEACOCK:  Your Honor, I can represent to the

20   Court that the circumstances have not changed.  Mr. Pearlman

21   has filed an affidavit.  I would ask that it be done in

22   camera, as it was done in Guam; and we would ask that the

23   appointment be continued with our office.  If the Court needs

24   more reasoning, I can provide it; but that's satisfactory at

25   this time for me.

1       THE COURT: Treating appointment under the Criminal

2   Justice Act as a matter involving the judiciary's

3   appropriation, I nonetheless inquire of the U.S. Attorney if

4   he has a position in this regard?

5       MR. HANDBERG: Your Honor, at this point we don't

6   object to the continued representation of Mr. Pearlman by the

7   Federal Public Defender's Office.

8       THE COURT: It would allow for continuity of

9   representation, of course.

10      MR. HANDBERG: Yes. And the issue that they -- I

11  have not obviously seen the affidavit that was submitted in

12  camera in Guam, so I don't know what that purports to

13  represent. The issue, obviously, in Mr. Pearlman's situation

14  is whether he has means somewhere; and we are in the process

15  of trying to sort that out and see to what extent --

16      THE COURT: Well, do you know of any funds that are

17  presently available to him for purposes of obtaining

18  representation?

19      MR. HANDBERG: None that I could certify to Your

20  Honor at this point. There are a number of leads that we're

21  following up on. But I would also say to Your Honor that in

22  addition to anything that may be forfeited pursuant to a

23  criminal statute by my office, I know that there's an active

24  bankruptcy trustee that is attempting to find Mr. Pearlman's

25  assets and appropriate them and there's a number of

1    creditors.

2           So I think it's a situation, as I understand it

3    right now, to the extent that assets are found, there's going

4    to be claims laid to those assets.  So I don't know if he has

5    assets that he would be able to use to retain counsel, with a

6    couple of exceptions.  I know that -- and that's what's so

7    confusing about his situation.  He does have a band in Europe

8    called US 5, which presumably has an income stream to which

9    he has some entitlement, which may be a legitimate source of

10   income.

11          So there's factors going on on both sides, but at

12   this point our position is to not oppose the appointment --

13   or the continued representation of the Federal Public

14   Defender without prejudice, if we should find sufficient

15   evidence to raise the matter with the Court again, to do so.

16          THE COURT:  Mr. Peacock, is he the subject of

17   involuntary petitions for bankruptcy pending in the

18   bankruptcy court for this district?

19          MR. PEACOCK:  I believe he is, Your Honor.

20          THE COURT:  He personally?

21          MR. PEACOCK:  Judge, I'm not totally familiar with

22   the bankruptcy, but I believe he is.

23          MR. HANDBERG:  He is, Your Honor.  I can certify

24   it.

25          THE COURT:  All right.  And, of course, the

1    government has knowledge of search warrants having been

2    allowed in seizures thereunder --

3              MR. HANDBERG:  Yes.

4              THE COURT:  -- of property, including property at

5    his residence?

6              MR. HANDBERG:  Yes.  Search warrants were executed

7    at his residence and his businesses.

8              THE COURT:  Of course, not for us generally, but

9    for matters and things subject to seizure --

10             MR. HANDBERG:  Yes.

11             THE COURT:  -- under the language of the

12   application and the writ that was allowed?

13             MR. HANDBERG:  Correct.

14             THE COURT:  Finally, you've got general and

15   specific allegations, forfeiture allegations, in the

16   Indictment that was in the intervening time returned or not?

17             MR. HANDBERG:  We do have the general allegations.

18   In the Indictment, there is not any property specifically

19   identified for forfeiture, and no Bill of Particulars has

20   been filed.

21             THE COURT:  Well, noting again now that he's been

22   detained on removal, so he's had no freedom to handle his

23   affairs since having been held to answer, and the

24   representation that, to counsel's knowledge, there's been no

25   change in his circumstances since then, when the Court found

1    him eligible, and although we're talking about an appointment

2    which would carry him through from arraignment to trial,

3    preparation for trial involves the need to have investigative

4    services, the need to have experts, the need to have other

5    services in order to prepare for trial, I'm satisfied that I

6    have made an appropriate inquiry, which is all the statute

7    requires, to allow for representation under the Criminal

8    Justice Act.

9         There are provisions in the statute, 3006(a), which

10   are relevant if circumstances should change.  For example, at

11   3006(a)(C), it provides that if any time after the

12   appointment of counsel the court finds the person is

13   financially able to obtain counsel or to make partial payment

14   for the representation, it may terminate the appointment of

15   counsel or authorize payment as provided for in subsection F,

16   as the interests of justice may dictate.

17        F provides whenever the United States court finds

18   that the funds are available for payment from or on behalf of

19   a person furnished representation and may authorize or direct

20   that such funds be paid to the appointed attorney by

21   association, defender, et cetera, et cetera, or to the court

22   for deposit in the treasury as a reimbursement to the

23   appropriation current at the time of payment to carry out the

24   provisions of this secretary -- of this section.

25        Well, what we have again here is a case and a

1   statute which provides that in every case, when a person

2   appears without counsel and does not waive counsel, if the

3   court is satisfied after appropriate inquiry, then counsel

4   will be appointed under the Act.

5           I signed the order and the Defender is appointed in

6   the case.

7           MR. PEACOCK:  Thank you, Judge.

8           THE COURT:  It would occur to me that the defendant

9   would be free to appear before the bankruptcy court and state

10  a claim and pursue any priority status that either the

11  Criminal Justice Act may allow, the plan of this court may

12  allow or the current appropriation may allow in preference to

13  other claims that may previously have been filed with the

14  court, the bankruptcy court.

15          MR. PEACOCK:  I'll certainly take that into

16  consideration, Your Honor.

17          THE COURT:  As you are advised.

18          Now, on further review of the record of proceedings

19  there in the District of Guam, it is noted that the defendant

20  did not oppose his removal but reserved the right to have

21  preliminary examination on the criminal complaint at the time

22  pending.

23          Of course, in the intervening time now, a grand

24  jury of this court has returned an Indictment, correct.

25          MR. HANDBERG:  That's correct, Your Honor.

1    THE COURT:  Have copies been provided?  Is the

2 defender aware of the Indictment of the court -- of the grand

3 jury?

4    MR. PEACOCK:  Yes, sir.

5    THE COURT:  And you have copies and Mr. Pearlman

6 has been provided with such copies?

7    MR. PEACOCK:  Yes, sir.

8    THE COURT:  So there's no need for and no

9 entitlement to preliminary examination under Rule Five.

10    MR. PEACOCK:  We'll still do one, Judge, if you

11 want to have one.

12    THE COURT:  Again, we proceed on initial appearance

13 then as to the Indictment.  Would the United States Attorney

14 summarize the charge or charges made by the grand jury in

15 this case at this time.

16    MR. HANDBERG:  Yes, Your Honor.  Mr. Pearlman is

17 charged in a five-count Indictment.  The first three counts

18 allege a scheme to defraud federally insured financial

19 institutions of over $100 million.

20    There are three executions of the scheme to defraud

21 set forth on pages seven and eight of the Indictment, and

22 those are all alleged in violation of Title 18, United States

23 Code, Section 1344, and the aiding and abetting statute,

24 Section Two.

25    Count Four is a mail fraud count as part of a

1    scheme to defraud also with respect to federally insured

2    financial institutions.  There's one count alleged in Count

3    Four set forth on page nine, a violation of Title 18, United

4    States Code, Section 1341, and again the aiding and abetting

5    statute.

6            Count Five is a wire fraud charge set forth on

7    pages ten and eleven, charging a violation of Title 18,

8    United States Code, Section 1343, and Section Two, the aiding

9    and abetting statute.

10           The bank fraud charges are each punishable by terms

11   of imprisonment of up to 30 years and a million dollar fine.

12   The mail and wire frauds carry maximum penalties of 20 years

13   each.

14           THE COURT:  Is there a count of the Indictment

15   which subsumes the charge by complaint?  Is that Count One?

16           MR. HANDBERG:  It is Count One, Your Honor.

17           THE COURT:  Subject to your pleas, Mr. Pearlman,

18   you are advised that you're not required to answer any

19   question or make any statement about these charges.  You have

20   the right to remain silent.  Anything you would say or

21   previously have said could be used against you at trial.

22           Whether anything you may previously have said or

23   admitted to could be used against you at trial would be

24   decided at the trial as part of the trial.

25           You're also advised of your right to retain

1   counsel, if your circumstances permit, if you wish to be

2   represented by an attorney of your choice, or to request that

3   counsel be appointed if the defendant cannot obtain counsel.

4   Such has been accomplished.

5            Finally, you have the right to be admitted to

6   reasonable bail unless a legal basis is shown for your

7   detention pretrial.

8            What is the government's position in this regard?

9            MR. HANDBERG:  Your Honor, we continue the

10  application that I understand was made in Guam that he be

11  detained pending trial on the grounds that there's a serious

12  risk that he will flee.

13           THE COURT:  On which grounds?

14           MR. HANDBERG:  On the grounds that he's a serious

15  risk of flight.

16           THE COURT:  Do we have a Pretrial Services' report,

17  Mr. Chatman?

18           PROBATION OFFICER CHATMAN:  (Unintelligible) the

19  report, Your Honor.  The defendant declined to be interviewed

20  on the advice of his attorney.

21           THE COURT:  But you have filed with the court that

22  which you received from Guam?

23           PROBATION OFFICER CHATMAN:  Correct, Your Honor.

24           THE COURT:  Do you have a copy of it yourself?

25           PROBATION OFFICER CHATMAN:  I do.

```
 1                THE COURT:  Has a copy been provided the counsel
 2       for the defense?
 3                MR. PEACOCK:  Yes, sir.
 4                THE COURT:  Any comment on the factual matters and
 5       things set out?
 6                MR. PEACOCK:  No, sir.
 7                THE COURT:  Any objection to it being made part of
 8       the record?
 9                MR. PEACOCK:  In camera, Your Honor, that would be
10       fine.
11                THE COURT:  Well, this was a report received under
12       seal, also?
13                PROBATION OFFICER CHATMAN:  Yes, Your Honor.
14                THE COURT:  Are you ready for a detention hearing?
15                MR. PEACOCK:  Your Honor, we are not prepared yet.
16       We have not had adequate time to talk with Mr. Pearlman.
17                So what I would request of the Court is time to do
18       that and allow us to come back, inform the Court on what our
19       position would be in regard to the detention hearing.
20                THE COURT:  Well, I think I'm aware of your
21       position.
22                MR. PEACOCK:  You probably are, yes, sir.
23                THE COURT:  What proffer does the government make
24       with respect to detention at this time?
25                MR. HANDBERG:  A number of things, Your Honor.
```

1   First of all, the fact that Mr. Pearlman would not be

2   consented -- would not consent to an interview with Pretrial

3   Services, as I understand is the case, on advice of counsel,

4   but the fact that he wouldn't be interviewed by the branch

5   that would be supervising him under the circumstances where

6   he was granted bond is a very disturbing fact in and of

7   itself.

8           MR. PEACOCK:  I object to that, Your Honor.  His

9   right to remain silent should not be used against him,

10  especially on the advice of counsel.

11          THE COURT:  Well --

12          MR. HANDBERG:  Well, but the --

13          THE COURT:  -- objection overruled.  It's just an

14  observation on the part of the government, and I'll hear it.

15          MR. HANDBERG:  Well, and I'm not talking about

16  questions related to the matters under Indictment.  I mean,

17  just the general questions that Pretrial Services asked him.

18  It's the practice of Pretrial Services not to ask about the

19  case, but where do you live?  What are your family ties to

20  the community?

21          THE COURT:  Well, as a practical matter, he's not

22  amenable to supervision if Pretrial Services has no file on

23  him.

24          MR. HANDBERG:  Correct.  And so I think on that

25  basis alone -- he could be detained on that basis alone.

1      In this case, he left January 26th of this year.

2  He went to Germany.  He left because the world, as he knew

3  it, was falling apart.  Creditors were after him.  Bank loans

4  were in default.  The State was investigating him related to

5  an investment program.  So he left.  He left on the 26th and

6  he's never come back.

7      In the time that he's gone, he's been to Indonesia.

8  According to his passport, he's been to Panama.  When he was

9  found in Indonesia by the authorities there, he was

10  registered at the hotel as A. Incognito Johnson.  He was

11  using a credit card that belonged to someone else with the

12  name of Johnson.

13      He had $20,000 in cash on him.  He had on his

14  person documents related to getting residence in Panama, a

15  place, again, that he had already visited.

16      People who knew about the circumstances of his

17  departure talked about him signing over cars, bank accounts,

18  making every indication that he was leaving and not coming

19  back.

20      He appears to have some means.  Like I mentioned

21  before, he's got a group in Europe called US 5.  Presumably,

22  he's got some income stream from that.

23      When he was apprehended by the Indonesian

24  authorities, he didn't have his passport on his person.  His

25  passport was at a local business that appears to have some

1    relation with him.

2           He has made efforts, based on the documents that

3    were seized by the Indonesian authorities, to be trying to

4    get money from condos that he had and getting support from

5    other people.  So he's got sources of income that he could

6    use to flee this jurisdiction should he be given bond.

7           I mean, there's a myriad of other factors as well,

8    Your Honor, but this is a case of someone who fled when

9    things were going bad and was brought back just through a

10   fortuitous circumstance of being found in Indonesia and being

11   deported to the United States.

12          THE COURT:  Response.

13          MR. PEACOCK:  Your Honor, as I said, we're not

14   prepared to go forward.  We would ask that the Court defer

15   the detention hearing until such time as we would request

16   one.

17          MR. HANDBERG:  And the United States has no

18   objections, obviously, to the waiver of the hearing, to have

19   it on short notice at a later date.

20          THE COURT:  Very well.  There's a showing in

21   support of a temporary order of detention, and the same is

22   given the Marshal.

23          Would you be ready by Friday?

24          MR. PEACOCK:  I doubt it, Your Honor.  I honestly

25   don't know.  We have had no time to speak with Mr. Pearlman

1   as his counsel.

2          MR. HANDBERG:  And I don't know if this is what Mr.

3   Fletcher was looking for.  I know it's the practice that a

4   defendant at the initial detention hearing can waive without

5   prejudice to bring it back up on a motion.  And I think --

6   that's what I meant when I said I had no objection, which

7   wouldn't impose the five-day continuation period, but would

8   allow them, once they're able to collect the evidence they

9   need to re-open the issue, should they find evidence would

10  give them a basis for.

11         MR. PEACOCK:  That's correct, Judge.

12         THE COURT:  Well, then, you're not really opposing

13  an order of detention as long as you have leave to renew or

14  re-open the hearing on evidence then available to you,

15  correct?

16         MR. PEACOCK:  Yes, Your Honor.

17         THE COURT:  I misunderstood.  Temporary order of

18  detention made final, and I'll hear you on short notice as a

19  magistrate or the assigned magistrate judge, Judge Baker --

20         MR. PEACOCK:  Yes, sir.

21         THE COURT:  -- when you're ready to go forward.

22         MR. PEACOCK:  Thank you.

23         THE COURT:  Finally, let's proceed to arraignment

24  pursuant to Rule Ten, if there's no objection, making it

25  unnecessary to reconvene on short notice for that purpose,

1   understanding, however, that a trial date will be set in time

2   allowed for the filing of motions.  Your response.

3        MR. PEACOCK:  Very well, Your Honor.  At this time,

4   Your Honor, in an abundance of caution, in order to -- in

5   order not to waive any potential issues of jurisdiction, I

6   would stand mute and Mr. Pearlman would stand mute to the

7   Indictment.

8        THE COURT:  Does he wish to have the substantive

9   charges of the Indictment read to him in order court?

10       MR. PEACOCK:  No, Your Honor.  As I noted before,

11   we have a copy of the Indictment.  I have provided Mr.

12   Pearlman with a copy of the Indictment, and we understand it

13   quite well.

14       THE COURT:  The Court proceeds to arraignment

15   nonetheless, noting pursuant to Rule Ten that he has a copy

16   of the Indictment.  The reading thereof having been waived, I

17   ask the defendant how he pleads, guilty or not guilty?

18       MR. PEACOCK:  Your Honor, once again, in order not

19   to waive any jurisdictional issues that may arise or

20   arguments in that regard, we would stand mute to the

21   Indictment.

22       THE COURT:  The defendant having been arraigned,

23   pleas of not guilty are entered for him.

24       I'm entering a scheduling order, criminal

25   scheduling order, in accordance with the practice of the

1    court.  It sets the case for criminal jury trial before the

2    Honorable G. Kendall Sharp, United States District Judge, on

3    the term commencing September 4, 2007, nine a.m. or as soon

4    thereafter as the case is called.  Time allowed for the

5    filing of motions or giving of notice in accordance with the

6    Federal Rules of Criminal Procedure as set out.

7              Today is the 11th?

8              THE COURTROOM DEPUTY:  Yes.

9              THE COURT:  The 11th.

10             Any questions?  Any applications on his behalf?

11             MR. PEACOCK:  No, sir.

12             THE COURT:  Is the government satisfied with the

13   record?

14             MR. HANDBERG:  Yes, Your Honor.  Thank you.

15             THE COURT:  Thank you for your time and attention.

16             (Proceedings were terminated at 2:25 p.m.)

17                     - - - - - - - -

18                  Reporter's Certification

19   I certify that the foregoing is a correct transcript from the

20   record of proceedings in the above-entitled matter.

21

22

23                  Diane Peede, RMR, CRR
                     Official Court Reporter
24                   United States District Court
     Date: August 8, 2007    Middle District of Florida
25